Ross *et al. v.* Southern Cotton-Oil. Co.

*(Circuit Court, E. D. Louisiana.* January 21, 1890.)

1. **Bailment—Loan—Liability of Borrower.**
   The borrower is liable for the sinking of a barge while being used for a different purpose than that for which it was loaned, though occasioned by stress of weather.

2. **Same—Damages.**
   An item for running plank at 35 cents per foot is *prima facie* exorbitant, and cannot be allowed on evidence merely that libelants paid the bill of which it is an item.

3. **Same.**
   The barge, before the damage, having no regular floor, but only loose dunnage, a charge for plank for floor cannot be allowed.

4. **Admiralty—Appeal—Trial de Novo.**
   Trial in the federal circuit court, on appeal in admiralty cases, being *de novo,* appellant may object to damages found by a commissioner in the district court, to which no exceptions were filed.

5. **Same—Costs on Appeal.**
   Though the decree is reduced in amount, costs of appeal will be given against appellant, where the reduction is by striking out items to which no objection was made below.

In Admiralty. Libel for damages. On appeal from district court.

*E. D. Craig,* for appellees.

*R. H. Browne,* for appellant.

Pardee, J. The transaction between the libelants and the respondent, which is the basis of the action in this case, is shown by the pleadings to have been one of loan. The second article of the libel charges—

"That on or about the 19th of December, 1887, at the request of said oil company, through Steinhardt & Co., of New Orleans, respondent loaned to the said Southern Cotton-Oil Company the barge Jimmy, for the use and transportation of cargo at the port of New Orleans, upon the waters of the Mississippi river, for the accommodation and use of said oil company."

To this respondent answers—

"That the matters and things therein alleged are in great part untrue, and falsely alleged and pleaded; and the truth is that during the month of December, 1887, the respondent having sold a large quantity of cotton-seed meal to L. Steinhardt & Co., of New Orleans, and being unable to deliver it on shipboard as promptly and quickly as they desired, respondent not being able to furnish sufficient transportation, that in consequence thereof said Steinhardt & Co. said to respondent's local manager, A. C. Landry, 'If we procure a barge, can you [meaning respondent] deliver the meal?' and respondent thereupon replied that it could; and Steinhardt & Co. then stated that they could obtain a barge from Ross, Keen & Co., New Orleans, said Ross, Keen & Co., being agents of the S. S. Mandelay, on which the cotton-seed meal was to be delivered for account of Steinhardt & Co.; that it was generally understood in the port of New Orleans that when the barges of Ross, Keen & Co. were spoken of it meant the barges of the Harbor Transportation Company, which were usually employed by them, and were insurable, as well as their cargoes were also insurable; that subsequently Steinhardt & Co. informed respondent that respondent could have the use of the barge called the 'Jimmy' without rental, but that the Southern Oil Company would have to pay the towing. Whereupon, on or about the 19th of December, 1887, respondent

sent for the barge, then lying at the usual landing place of the Harbor Transportation Company, at the foot of Soraparu street, which barge proved to be the barge called the 'Jimmy.'"

There is no material conflict between the two pleadings as to the actual fact in the case, which unquestionably was that Ross, Keen & Co. loaned their barge Jimmy for the use of the Southern Cotton-Oil Company, and that the Southern Cotton-Oil Company accepted the loan. It is admitted in the case that the oil company used the barge for a different purpose than that for which it was loaned, and that while so being used the barge was sunk. The libel says that it was "by the improper use of said cotton-oil company, and want of attention to the proper lading of, and care of, said barge." The respondent says that—

"While the barge was lying properly laden, properly secured and moored, heavy weather, and a severe gale of wind, set in, continuing all night and the next morning, when, the combing of the barge being entirely too low, the waves swept over her, filling her with water, and sunk her, with all her cargo of cotton-seed, to her gunnels."

"If the borrower employs the thing to another use, or for a longer time than has been agreed on, he should be liable for the loss which may happen, although the same might have happened by chance." Rev. Civil Code La. art. 2899. To the same effect, see 2 Kent, Comm. 574. There seems to be no question, then, that the respondent is liable for the damage done to the barge by the swamping and sinking.

The question left is as to the amount of damages. In the district court the matter was referred to a commissioner, who reported $400.47. It appears that the respondent filed no exceptions in the district court to the report of the commissioner; and it is now contended that he cannot object in this court to any of the several items making up the amount of damages so reported. The trial in this court is *de novo;* and I am of the opinion that the respondent can make all the defenses that he has on this appeal, although he may have made none in the district court.

The respondent objects to the whole amount of damage, because, he says, the barge was not injured at all by the sinking aforesaid; that it was an old barge, out of repair, and needed calking; and that no injury whatever resulted from the sinking, which, his proctor now says, was because of the leaky condition of the barge. The evidence shows that the barge was not in a leaky condition before it was delivered to the respondent; that it was dry, and had not, in fact, been pumped out for six weeks or more before the delivery; and the respondent's answer shows that the barge was sunk, not because it leaked, but because the combings of the barge were entirely too low, so that the waves swept over her, filling her with water. The weight of the evidence, too, is in favor of the proposition that when the barge did sink one end rested on the shore, in such a way that the barge was to some extent twisted and strained.

The respondent also objects to one specific item in the repair bill, which is for 195 running feet of plank, at 35 cents per foot, making a sum of $68.25. His objections are that this charge is *prima facie* exor-

bitant, and that it was not proved by the evidence; the only evidence in the record being that the libelants paid the bill, of which this constitutes an item. I think the objection is good. Respondent also objects to an item of 2,000 feet of planks for the floor, at 3½ cents per foot, amounting to $70. The evidence shows that prior to the damage the barge had no regular floor, but only loose dunnage, and that the report of the inspector with regard to the floor was a mistake. It follows that this item should not be allowed. The balance of the claim allowed for damages, as allowed by the commissioner, seems to be substantially right; and a decree for the amount will be entered.

Of course, the costs of the district court will have to be paid by the respondent; and I am inclined to think that the costs of this court should also be paid by the respondent, because, although the decree is reduced in amount on the appeal, yet it is in regard to items which the respondent should have objected to in the district court; the presumption being that if he had so objected those items would have been rejected. It is therefore ordered, adjudged, and decreed that the libelant recover from the respondent, the Southern Cotton-Oil Company, doing business in the city of New Orleans, existing under the laws of the state of New Jersey, in the sum of $262.22, with 5 per cent. interest from judicial demand till paid, and all costs of suit.